UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| WESTMORELAND SERVICE INC., | ) | |
| G.N.W. ENTERPRISES, INC., and | ) | |
| HALLS FERRY SERVICE, LLC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:13CV00653 AGF |
| | ) | |
| QUIKTRIP CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This antitrust action is before the Court on Defendant's motion to dismiss the

complaint for failure to state a claim.  For the reasons set forth below, the motion shall be

granted.

## BACKGROUND

Plaintiffs are owners of independent gas stations in the St. Louis metropolitan

area.  Defendant, a gasoline distributor and retailer, purchases gasoline directly from a

refinery and distributes it exclusively to the retail gas stations it owns in the St. Louis

metropolitan area.

Plaintiffs allege that since July 1, 2011, Defendant has engaged in a "price war"

with Plaintiffs and other gas station owners in the St. Louis metropolitan area.  Plaintiffs

also contend that Defendant's gasoline pricing was predatory because Defendant sells its

gasoline for less than it costs.

Plaintiffs assert that Defendant posted pricing changes for its gasoline on an almost daily basis, in some cases changing its prices several times in a day.  Plaintiffs further contend that they have been forced to lower their retail gasoline prices to maintain customers.  In addition, Plaintiffs charge that as a result, independent gas station owners have been forced out of the market, including Plaintiffs Westmoreland and G.N.W. Enterprises.

Finally, Plaintiffs contend that Defendant has engaged in this "predatory price war" "to monopolize the sale of retail gasoline in the St. Louis metropolitan marketplace" and "to dominate the marketplace in a manner that will allow it to recoup any losses it incurred as a result of its selling gasoline below its cost."  (Doc. No. 1, ¶¶ 8, 10.)

<u>DISCUSSION</u>

**I.  STANDARD OF REVIEW**

On a motion to dismiss, the Court accepts as true the factual allegations contained in the complaint and grants the plaintiff the benefit of all reasonable inferences that can be drawn from those allegations.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872-72 (8th Cir. 2010).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim has facial plausibility, "'when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  A pleading that offers labels and conclusions or a formulaic

recitation of the elements of a cause of action will not do.'" *Cox v. Mortg. Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678) (alteration in original).

Generally courts are hesitant to dismiss antitrust actions before the parties have had an opportunity to conduct discovery because proof of illegal anti-competitive conduct lies largely in the hands of the defendant. *See Double D Spotting Serv., Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998). Although there is no heightened pleading requirement for antitrust claims, *Foam Supplies, Inc. v. Dow Chem. Co.*, No. 4:05CV1772 CDP, 2006 WL 2225392, at *3 (E.D. Mo. Aug. 2, 2006), "[t]he essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on the defendant's Rule 12(b)(6) motion." *Double D Spotting Serv.*, 136 F.3d at 558 (citation and internal quotation marks omitted). "In sum, when considering a motion to dismiss antitrust claims, the dispositive issue remains whether the complaint contains 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Foam Supplies*, 2006 WL 2225392, at *3 (citations omitted).

## II.  ANALYSIS

### A. <u>Robinson-Patman Act Claim</u>

A plaintiff must plead four elements to state a claim for a "primary-line"[1] price

---

[1]     Section 2(a) applies to three categories of violations: "[a] primary-line violation occurs where 'the discriminating seller's price discrimination adversely impacts competition with his--the seller's--competitors;' a secondary-line violation occurs where 'the discriminating seller's price discrimination injures competition among [the seller's]

discrimination violation under § 2(a) of the Robinson-Patman Act: (1) that the same seller discriminated in price by making two or more contemporaneous sales at different prices to different parties; (2) of commodities of like grade and quality; (3) where at least one of the sales was made in interstate commerce; and (4) this price discrimination substantially affected competition between the plaintiff and the defendant.  15 U.S.C. § 13(a); *see Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 555 (1990) (listing the four factors and holding that discrimination in price meant merely a difference in price); *Godfrey*, 276 F.3d 405, 408 (8th Cir. 2002) (applying *Texaco Inc. v. Hasbrouck*'s four element requirement).

A plaintiff seeking to establish an effect on competition, or a "competitive injury," resulting from a rival's pricing must plead three additional elements.  First, the plaintiff must allege that "the prices complained of are below an appropriate measure of its rival's costs."  *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222 (1993).  Plaintiff also must define the relevant market in which competition is injured. *Brooke Group*, 509 U.S. at 225-26; *Bathke v. Casey's General Stores, Inc.*, 64 F.3d 340, 344-45 (8th Cir. 1995).  Finally, the plaintiff must allege that there is a reasonable prospect of the defendant gaining sufficient market power to set monopoly prices and to recoup the losses resulting from its predatory pricing.  *Brooke Group*, 509 U.S. at 224-25; *Bathke*, 64 F.3d at 344.

---

customers . . . ;' and a tertiary violation occurs where the customers of the purchasers of the discriminating seller 'compete[] within a unified market region.'"  *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 408 n.7 (8th Cir. 2002) (quoting *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 584 n.1 (2d Cir. 1987)).

1.  Pleading the Interstate Commerce Element

Defendant asserts that Plaintiffs fail to plead the interstate commerce element of their claim with sufficient specificity to satisfy the jurisdictional requirement of the Robinson-Patman Act.[2]  Throughout the complaint, all geographic references relate only to the presence or activity of both parties in Missouri or in the St. Louis metropolitan area.  Plaintiffs explicitly allege that the events giving rise to this action occurred in this District.  (Doc. No. 1, ¶ 4).  Moreover, Plaintiffs allege a violation of Missouri state law but not Illinois state law.  The complaint also asserts that the events giving rise to this action occurred in the Eastern District of Missouri.

Jurisdiction under the Robinson-Patman Act is relatively narrow and "extends only to persons and activities that are themselves 'in commerce.'"  *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194 (1974).  Such jurisdiction is not established "merely by showing that allegedly anticompetitive acquisitions and activities affect commerce." *Id.* at 195.  "With almost perfect consistency, the Courts of Appeals have read the language requiring 'either or any of the purchases' involved in such discrimination be 'in commerce' to mean that § 2(a) applies only where at least one of the two transactions which, when compared, generate discrimination . . . crosses a state line."  *Id.* at 200 (citations omitted).  "Thus, the plain language of Section 2(a), and the cases interpreting

---

[2]      The Court notes that Defendant styled its motion as one under Federal Rule of Civil Procedure 12(b)(6) rather than Rule 12(b)(1).  "[W]hether the dismissal is granted under either rule, the same interstate commerce analysis applies—whether the complaint adequately alleges the nexus between defendants' conduct and interstate commerce." *Huelsman v. Civic Ctr. Corp.*, 873 F.2d 1171, 1174-75 (8th Cir. 1989) (citing *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 742 n.1 (1976)).

that section, clearly establish the jurisdictional nature of the Act's unique 'in commerce' requirement." *Godfrey*, 161 F.3d at 1141.

Applying these principles, the Court concludes that Plaintiffs have not met the "in commerce" requirement under the Robinson-Patman Act because they do not allege that purchases relevant here involved gasoline transported across a state line in the course of its sale. *Compare Diaz Aviation Corp. v. Airport Aviation Servs., Inc.*, 762 F. Supp. 2d 388, 395-96 (D. Puerto Rico 2011) (dismissing antitrust action concerning price discrimination in sales of aviation fuel because the complaint failed to allege that the fuel crossed a state line in the sale), *and Mass. Brewers Ass'n v. P. Ballantine & Sons Co.*, 129 F. Supp. 736, 739 (D. Mass. 1955) (holding that the complaint failed to allege unlawful price discrimination in the course of interstate commerce where all sales were made in Massachusetts by Massachusetts distributors to Massachusetts retail licensees), *with Utah Pie Co. v. Cont'l Baking Co.*, 386 U.S. 685, 689-90 (1967) (holding the interstate commerce element was satisfied where defendant sold frozen pies to grocery stores in another state), *and Godfrey*, 161 F.3d at 1141 (8th Cir. 1998) (holding that the appellants satisfied the interstate commerce requirement because the defendant's sales to customers in Illinois involved crossing a state line).

Moreover, Plaintiffs do not allege that Defendant's distribution activities implicate interstate commerce. The location of the refinery from which Defendant receives its gasoline is not specified, and Plaintiffs make no assertion that the gasoline traveled in interstate commerce before the sale to Defendant's customers. *See Bacon v. Texaco, Inc.*, 503 F.2d 946, 948 (5th Cir. 1974) (holding that where crude oil traveled in interstate

commerce but the gasoline resulting from its substantial change in the refining process had never traveled "in commerce").  Finally, Plaintiffs do not allege that Defendant shipped gasoline across state lines to customers, sold to customers who obviously would transport the gasoline out of state, or bought gasoline to fill specific orders from customers or in anticipation of particular customers' orders.  *See, e.g.*, *White Industries, Inc. v. Cessna Aircraft Co.*, 657 F. Supp. 687, 699-700 & n.18 (W.D. Mo. 1986).

### 2.  Contemporaneous Sales

Even if Plaintiffs had properly pled the "in commerce" requirement, Plaintiffs' complaint would still be subject to dismissal because they do not allege that Defendant "discriminate[d] in price between different purchasers of commodities of like grade and quality," such that either of the purchases could be said to have occurred "in commerce. . . ."  15 U.S.C. § 13.  *See also Hasbrouck*, 496 U.S. at 555.  Indeed, the Court notes that Plaintiffs do not dispute Defendant's assertion that they failed to allege contemporaneous gasoline sales at differing prices.

### 3.  Pleading Effect on Competition for a Predatory Pricing Claim

Defendant also asserts that Plaintiffs failed to plead two necessary parts of the "effect on competition" element for a predatory pricing claim.  First, Defendant argues Plaintiffs have not adequately defined the relevant market, and second, Defendant contends that Plaintiffs have not sufficiently pled that Defendant had a reasonable prospect of recoupment.

#### a.  Relevant Market

A plaintiff must identify the market, called the relevant market, in which

competition is allegedly harmed.  *Double D*, 136 F.3d at 560 (citations omitted).  The relevant market has two components: a product market and a geographic market.  *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 345 (8th Cir. 1995).  The product market refers to "all reasonably interchangeable products," or goods that have a high cross-elasticity of demand.[3]  *Double D*, 136 F.3d at 560 (citations omitted).  The geographic market refers to "the geographic area in which consumers can practically seek alternative sources of the product."  *Id.* (citations omitted).

Generally, "proper market definition can be determined only after a factual inquiry into the commercial realities faced by consumers."  *See FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1052 (8th Cir. 1999) (citation omitted).  This general rule does not, however, prohibit the dismissal of antitrust claims for failing to plead a relevant market.  *Double D*, 136 F.3d at 560.  Dismissal of antitrust claims at this stage of the proceeding will be appropriate where the relevant market alleged is "too narrow, implausible, defined solely by franchise agreement, or simply not defined anywhere in the pleadings."  *Foam Supplies Inc. v. Dow Chem. Co.*, No. 4:05CV1772 CDP, 2006 WL 2225392, at *4 (E.D. Mo. Aug. 2, 2006).

*i.  Product Market*

Defendant argues that Plaintiffs' failure to reference the rule of interchangeability and cross-elasticity of demand is fatal to their allegations regarding the relevant market.  *See Queen City Pizza, Inc. v. Domino's Pizza Inc.*, 124 F.3d 430, 436-37 (3d Cir. 1997);

---

[3]   "Cross elasticity of demand refers to the change in the demand by consumers for one product as a result of a change in the price of another product."  *Hayden Publishing Co. v. Cox Broadcasting Corp.*, 730 F.2d 64, 70 n.9 (2d Cir. 1984) (citations omitted).

*Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 896 (S.D.N.Y. 2001).
Defendant specifically notes that Plaintiffs failed to mention possible substitute products
like diesel fuel or gasohol.[4]

The Court concludes that the rule of interchangeability and cross-elasticity of
demand "are not 'magic words' that must appear in a complaint to withstand a motion to
dismiss." *See Foam Supplies v. Dow Chem. Co.*, 2006 WL 2225392, at *4.  They are
methodologies used by courts to determine the relevant market.  *Id.*  So rather than
"searching for magic words or phrases, a court must determine whether the complaint
alleges sufficient facts to permit the court to reasonably infer that the proposed product
market includes all 'market alternatives that buyers may readily use for their purposes.'"
*Id.*  (citation omitted).[5]

Having thoroughly reviewed the complaint, the Court concludes that Plaintiffs'
allegations could support their claim that the St. Louis market for retail gasoline is the
appropriate relevant market.  First, the proposed relevant market does not appear to be
defined narrowly merely to increase Defendant's market share.  Plaintiffs have identified
a commonly used commodity rather than limiting the product market to a single brand,
franchise, or institution.  *See Foam Supplies*, 2006 WL 2225392, at *4 (citing cases);
C*ommercial Data Servers, Inc. v. Int'l Business Machines Corp.*, 166 F. Supp. 2d 891,

---

[4]     "Gasohol is a fuel consisting of 90% gasoline and 10% ethyl alcohol."  *Robertson v. White*, 81 F.3d 752, 754 (8th Cir. 1996).

[5]     "Put another way, at the pleading stage, 'it is sufficient that [the] plaintiff has alleged specific facts that support a narrow product market in a way that is plausible and bears a rational relation to the methodology courts prescribe to define a market for antitrust purposes.'"  *Foam Supplies*, 2006 WL 2225392 (citations omitted).

897 (S.D.N.Y. 2001); *cf. Bathke v. Casey's General Stores, Inc.*, 64 F.3d 340, 345 (8th Cir. 1995) (noting that the parties agreed that the relevant product market was gasoline).

Here, unlike C*ommercial Data Servers*, the complaint does not contain allegations indicating products that may be deemed substitutes for the product alleged to comprise the relevant market.  *See* C*ommercial Data Servers*, 166 F. Supp. 2d at 897 (holding that the plaintiff failed to plead a relevant market because the plaintiff failed to allege any facts explaining why the market should not include workstations or PCs where plaintiff had alleged the market was a "mainframe," which was defined as "a single location processor which provides computing services to multiple workstation terminals"); *Smith & Johnson, Inc. v. Hedaya Home Fashions Inc.*, 1996 WL 737194, at *6 (S.D.N.Y. Dec. 26, 1996) (concluding that the plaintiff had failed to plead a relevant product market as a matter of law because the plaintiff did not explain why afghans are not interchangeable with other similar products such as quilts, spreads, blankets, and comforters).  In the C*ommercial Data Servers* case "multiple workstations" were deemed substitutes for a "mainframe" as defined in the complaint, but here the allegations are insufficient to indicate that diesel fuel is interchangeable with gasoline and thus a component of the relevant product market.  Therefore the Court cannot say as a matter of law that these allegations characterizing "gasoline" alone as the relevant product market are inadequate.

### ii.  Geographic Market

Dismissal at the pre-discovery pleading stage has generally been limited to "glaring deficiencies" such as:  (1) failing to "allege[] a geographic market or the boundaries or a relevant geographic market, (2) define[ing] a geographic market in an

unreasonably and implausibly narrow manner, or (3) alleg[ing] a contradictory and vague delineation of the relevant geographic market." *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 444 (4th Cir. 2011) (quoting *Allen v. Dairy Farmers of America, Inc.*, 748 F. Supp. 2d 323, 338-39 (D. Vt. 2010)).  Defendant challenges the pleading of the relevant geographic market on the first and third grounds.

Upon review, the Court concludes that Defendant's argument is unavailing.  "As the minimal requirement here is merely that Plaintiffs provide notice of the market[] being targeted, and not that they provide specific definitions of [the] market, Plaintiffs have met the minimum threshold." *Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 447 (S.D.N.Y. 2008).; s*ee also Acre v. Spindletop Oil & Gas Co.*, No. 4:09CV00421 JLH, 2009 WL 4016116, at *7 (E.D. Ark. Nov. 18, 2009) (concluding that the geographic market was inadequately alleged where it was impossible to know what states were included in the relevant market identified as "Arkansas and surrounding states").

Defendant also argues that Plaintiffs' references to the "St. Louis metropolitan area," (Doc. No. 1 ¶ 1, 25), the "St. Louis metropolitan marketplace," (Doc. No. 1 ¶ 8), the "St. Louis marketplace," (Doc. No. 1 ¶¶ 11-13, 19), and the "St. Louis area marketplace" (Doc. No. 1 ¶¶ 24, 32) are too vague and ambiguous to satisfy the requirement to plead a specific geographic market.  The Court finds the cases Defendant cites in support of this contention unpersuasive and declines to dismiss the complaint on this basis.

The phrases Defendant identifies can be fairly read to refer to the same geographic

area, unlike the contradictory allegations in the cases on which Defendant relies.  *See Acre*, 2009 WL 4016116, at *7 (holding that the plaintiff failed to plead a geographic market because the complaint contained contradictory references to "Arkansas" and "Arkansas and the surrounding states" as the relevant market); *Mathias v. Daily News, L.P.*, 152 F. Supp. 2d 465, 483 (S.D.N.Y. 2001) (concluding that the plaintiffs' definition of the relevant geographic market was vague not because of the breadth of the "tri-state area" market but rather because of the contradictory and imprecise nature of the plaintiffs' shifting definition of the relevant market between the broader national market and the narrower "tri-state area" market).

Therefore, the Court concludes that Plaintiffs have sufficiently alleged the relevant geographic market for the purpose of this motion to dismiss.

### b.  Recoupment

Having defined the relevant market, the Court next considers Defendant's prospect of recoupment and its ability to act as a monopolist in the relevant market.  *See FTC v. Tenet Health Care Corp.*, 186 F.3d 1045, 1051 (8th Cir. 1999); *United States v. Eastman Kodak Co.*, 63 F.3d 95, 104 (2d Cir. 1995).  Plaintiffs allege that Defendant's predatory pricing actions "demonstrate [its] intent to monopolize the retail sale of gasoline in the St. Louis area marketplace, and further demonstrate that there is a dangerous possibility of [Defendant] achieving monopoly power. . . .  [Defendant] has engaged in . . . below cost predatory pricing in an attempt to monopolize the retail gasoline marketplace in the St. Louis metropolitan area."  Doc. No. 1, ¶¶ 24, 25.)

To plead the "reasonable prospect of recoupment," required under the Robinson-

Patman Act, the plaintiff must support its assertions regarding monopoly power with specific facts regarding the defendant's market share, the number of competitors in the market, the market participants' relative market positions, barriers to market entry, and the capacity of the defendant to absorb the market shares of its rivals.  *See Brook Group*, 509 U.S. at 226; *Dial A Car, Inc. v. Transportation, Inc.*,82 F.3d 484, 487-88 (D.C. Cir. 1996); *Mizlou Television Network*, 603 F. Supp. 677, 684.

Upon review of the allegations here, the Court concludes that although Plaintiffs' complaint "recites the proper conclusory verbiage," it "suffers from a paucity of facts." *Mizlou Television Network, Inc. v. National Broadcasting Co.*, 603 F. Supp. 677, 684 (D.C. Cir. 1984).  The pleadings offer no more than "labels and conclusions or a formulaic recitation of the elements of a cause of action," and thus will not satisfy the pleading standard.  *See Cox*, 685 F.3d 663, 668; *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (rejecting a conclusion couched as a statement of fact when the Court found that the plaintiff had failed to allege any actual facts in support of assertion that they were deprived of a minimally adequate education, including failing to plead that they had not been taught to read or write or instructed on even the educational basics).  Plaintiffs' allegations that two plaintiffs were driven out of the market are insufficient to adequately plead injury to competition.  "To injure, even to cripple or destroy, one or two competitors in a market will not, if there are many competitors in that market, have much if any effect on consumers or anyone else besides the injured competitor." *Mizlou Television Network*, 603 F. Supp. at 684 (citation and internal quotation marks omitted).

In addition, Plaintiffs fail to allege any facts concerning the structure of the

market, Defendant's market share, the number of participants in the market or their relative positions, barriers to entry into the retail gasoline market, or Defendant's capacity to absorb the market shares of its rivals.  Therefore, the Court concludes that Plaintiffs have failed to state a claim for discriminatory pricing under § 2 of the Robinson-Patman Act.  *See Brooke Group*, 509 U.S. at 224; *Cardinal Industries, Inc. v. Pressman Toy Corp.*, No. 96 Civ. 4590, 1996 WL 724730, at *5 (S.D.N.Y. Dec. 17, 1996) (holding that a plaintiff must allege facts that, if proved, would establish recoupment as an element of a price discrimination claim); *see also Dial A Car*, 82 F.3d at 487-88 (dismissing claim because the plaintiff failed to plead, first, that the defendant would be able to achieve a monopoly position in the relevant market and, second, that it could sustain that position after it wields its power and raises prices).

Plaintiffs also fail to allege a "reasonable prospect" of recoupment because they do not allege injury to the affiliated gasoline stations in the market.  Plaintiffs only assert that predatory pricing will destroy the independent segment of the industry.  *See USA Petroleum Co. v. Atlantic Richfield Co.*, 577 F. Supp. 1296, 1304 (C.D. Cal. 1983) (dismissing for failing to allege facts indicating a "dangerous probability of success" where the plaintiff pled that the result of the defendant's conduct would be the destruction of the independent segment of the industry, leaving a market controlled by the major oil companies, not just the defendant).

**B. <u>Sherman Act Claim</u>**

The Court next addresses Plaintiffs' allegation that Defendant attempted to

monopolize the market, in violation of § 2 of the Sherman Act.[6]  Section 2 provides that "every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce . . . shall be deemed guilty of a felony."  15 U.S.C. § 2.  To bring a claim under § 2, a plaintiff must allege facts sufficient to satisfy the interstate commerce jurisdictional requirement.  In addition, to demonstrate attempted monopolization under a predatory pricing theory, a plaintiff must prove (1) that the defendant has engaged in predatory conduct by pricing below an appropriate measure of the defendant's costs (2) with the specific intent to monopolize and (3) a dangerous probability of recouping its losses due to below-cost pricing.  *See Brooke Group*, 509 U.S. 209, 222-24.

### 1.  Pleading of the Interstate Commerce Element

"Jurisdiction under the Sherman Act arises when anticompetitive activity prohibited by the Act occurs in the flow of interstate commerce or, where wholly local in nature, substantially affects interstate commerce."  *Huelsman v. Civic Ctr, Corp.*, 873 F.2d 1171 (8th Cir. 1989) (citing *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241 (1980)).  Failure to plead the interstate commerce element of a Sherman Act claim deprives the court of subject matter jurisdiction.  *McLain*, 444 U.S. at 242.  To establish such jurisdiction a plaintiff may not "merely . . . rely on identification of a relevant local activity and . . . presume an interrelationship with some unspecified aspect of interstate commerce."  *Id.*  Rather, a plaintiff must explicitly allege "a general

---

[6]   If Plaintiffs' claim is construed as one for actual monopolization, it also would fail because Plaintiffs never allege that Defendant has or ever had monopoly market power.

connection with interstate commerce, and an effect thereon resulting from defendant's allegedly illegal conduct." *Diaz Aviation*, 762 F. Supp. 2d at 395 (citation and internal quotation marks omitted).  Although a plaintiff need only allege a general connection, a court may not presume or imply such a relationship—the nexus must be explicitly pled. *See McLain*, 444 U.S. at 242; *Diaz Aviation*, 762 F. Supp. 2d 388, 395-96 (D. Puerto Rico 2011) (dismissing Sherman Act claim concerning sales of aviation fuel because plaintiff failed to plead any relationship between the challenged activity and interstate commerce); *U.S. General, Inc. v. Draper City*, No. 2:05-CV-917 TS, 2006 WL 1594184 (D. Utah June 7, 2006) (refusing to presume a nexus between challenged activity and interstate commerce and dismissing antitrust action because plaintiffs failed to allege defendants' activities impacted interstate commerce in any way).

As noted above, Plaintiffs' complaint refers only to Missouri and does not mention interstate commerce or allege a relationship between Defendant's activities and interstate commerce.  These allegations, without more, are insufficient to allege, even in a general way, the required nexus to interstate commerce.

2.  Pleading of Predatory Pricing Recoupment

a.  Relevant Market

Defendant contends, as it did with respect to Plaintiffs' Robinson-Patman Act claim, that Plaintiffs failed to define the relevant market sufficiently.  For the reasons noted above, the Court accepts Plaintiffs' definition of the relevant market as sufficient to survive a motion to dismiss.

b.  Recoupment

A plaintiff making a predatory pricing claim under § 2 of the Sherman Act must plead facts showing a dangerous probability of recoupment, a higher standard than the reasonable prospect of recoupment required for a claim under § 2(a) of the Robinson-Patman Act.  *See Brooke Group*, 509 U.S. 209, 224-25.  Having determined that Plaintiffs failed to plead facts supporting the less onerous "reasonable prospect" of recoupment applicable under § 2(a) of the Robinson-Patman Act, the Court concludes, *a fortiori*, that Plaintiffs do not plead facts supporting a dangerous probability of recoupment.

### C.  <u>Missouri Motor Fuel Marketing Act Claim</u>

Having dismissed Counts I and II, the claims on which this Court's original jurisdiction was based, the Court declines to exercise its discretion to retain supplemental jurisdiction over the remaining state-law claims.  *See* 28 U.S.C. § 1367 (c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction."); *McLaurin v. Prater*, 30 F.3d 982, 985 (8th Cir. 1994).

<u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss is **GRANTED** as to Counts I and II of the complaint.  (Doc. No. 5.)

**IT IS FURTHER ORDERED** that the remaining state law claim, Count III, is

**DISMISSED** without prejudice, pursuant to 28 U.S.C. § 1367(c)(3).


_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of January, 2014.